1

2

3

4

5

6

7

8                    **IN THE UNITED STATES DISTRICT COURT**

9                  **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11   MARK A. EVANS,                         No. CIV S-10-2820-CMK

12                    Plaintiff,

13          vs.                             <u>ORDER</u>

14   COMMISSIONER OF SOCIAL
     SECURITY,
15
                     Defendant.
16   _____/

17                  Plaintiff, who is proceeding with retained counsel, brings this action for judicial

18   review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g).

19   Pursuant to the written consent of all parties, this case is before the undersigned as the presiding

20   judge for all purposes, including entry of final judgment.  <u>See</u> 28 U.S.C. § 636(c).  Pending

21   before the court are plaintiff's motion for summary judgment (Doc. 18) and defendant's cross-

22   motion for summary judgment (Doc. 19).  For the reasons discussed below, the court will deny

23   plaintiff's motion for summary judgment or remand and grant the Commissioner's cross-motion

24   for summary judgment.

25   / / /

26   / / /

# I.  PROCEDURAL HISTORY[1]

Plaintiff applied for social security benefits protectively on March 14, 2008, alleging an onset of disability on October 2, 2007, due to disabilities including back pain, depression, sleep apnea, fibromyalgia, and headaches (Certified administrative record ("CAR") 53-54, 107-08, 115-125).  Plaintiff's claim was denied initially and upon reconsideration. Plaintiff requested an administrative hearing, which was held on November 16, 2009, before Administrative Law Judge ("ALJ") Gerardo Mariani. In a December 8, 2009 decision, the ALJ concluded that plaintiff is not disabled[2] based on the following findings:

---

[1]      Because the parties are familiar with the factual background of this case, including plaintiff's medical history, the undersigned does not exhaustively relate those facts here.  The facts related to plaintiff's impairments and medical history will be addressed insofar as they are relevant to the issues presented by the parties' respective motions.

[2]      Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq.  Supplemental Security Income ("SSI") is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq.  Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).  A five-step sequential evaluation governs eligibility for benefits.  See 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).  The following summarizes the sequential evaluation:

> Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
> Step two:  Does the claimant have a "severe" impairment? If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
> Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
> Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
> Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation

1.      The claimant meets the insured status requirements of the Social Security Act at least though December 31, 2012.

2.      The claimant has not engaged in substantial gainful activity since October 2, 2007, the alleged onset date (20 CFR 404.1571 *et seq*.).

3.      The claimant has the following severe impairments:  fibromyalgia and obesity (20 CFR 404.1520(c)).

4.      The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526).

5.      After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b)[FN] except that he can engage in postural activities only occasionally and must avoid concentrated exposure to extreme cold and vibration.

> [FN:  Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job in this category requires a good deal of walking or standing, or it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.]

6.      The claimant is capable of performing past relevant work [FN] as a counter clerk, auto parts - a light (performed as medium) and skilled, SVP5, job.  This work does not require the performance of work-related activities precluded by claimant's residual functional capacity (20 CFR 404.1565).

> [FN:  Other past relevant work, according to the credible testimony of the vocational expert, consisting of a ranch hand (heavy and semiskilled, SVP 4) and a gas attendant (medium and semiskilled, SVP 3), the claimant is not capable of performing because exertional demands exceed the residual functional capacity.]

/ / /

process.  <u>Bowen</u>, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  <u>Id</u>.

7.    The claimant has not been under a disability, as defined in the Social Security Act, from October 2, 2007 through the date of this decision (20 CFR 404.1520(f)).

(CAR 16-25).  After the Appeals Council declined review on August 20, 2010, this appeal followed.

## II.  STANDARD OF REVIEW

The court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole.  See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).  "Substantial evidence" is more than a mere scintilla, but less than a preponderance.  See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996).  It is "such evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 402 (1971).  The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed.  See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  The court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence.  See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive.  See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987).  Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

## III.  DISCUSSION

Plaintiff argues the ALJ erred in three ways:  (1) the ALJ erred in his evaluation of the medical opinion evidence; (2) the ALJ erred in evaluating plaintiff's credibility; and (3) the

1  ALJ erred in his evaluation of the vocational expert's opinion.

2  **A.    MEDICAL OPINIONS**

3        The weight given to medical opinions depends in part on whether they are

4  proffered by treating, examining, or non-examining professionals.  See Lester v. Chater, 81 F.3d

5  821, 830-31 (9th Cir. 1995).  Ordinarily, more weight is given to the opinion of a treating

6  professional, who has a greater opportunity to know and observe the patient as an individual,

7  than the opinion of a non-treating professional.  See id.; Smolen v. Chater, 80 F.3d 1273, 1285

8  (9th Cir. 1996); Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987).  The least weight is given

9  to the opinion of a non-examining professional.  See Pitzer v. Sullivan, 908 F.2d 502, 506 & n.4

10  (9th Cir. 1990).

11        In addition to considering its source, to evaluate whether the Commissioner

12  properly rejected a medical opinion the court considers whether:  (1) contradictory opinions are

13  in the record; and (2) clinical findings support the opinions.  The Commissioner may reject an

14  uncontradicted opinion of a treating or examining medical professional only for "clear and

15  convincing" reasons supported by substantial evidence in the record.  See Lester, 81 F.3d at 831.

16  While a treating professional's opinion generally is accorded superior weight, if it is contradicted

17  by an examining professional's opinion which is supported by different independent clinical

18  findings, the Commissioner may resolve the conflict.  See Andrews v. Shalala, 53 F.3d 1035,

19  1041 (9th Cir. 1995).  A contradicted opinion of a treating or examining professional may be

20  rejected only for "specific and legitimate" reasons supported by substantial evidence.  See Lester,

21  81 F.3d at 830.  This test is met if the Commissioner sets out a detailed and thorough summary of

22  the facts and conflicting clinical evidence, states her interpretation of the evidence, and makes a

23  finding.  See Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989).  Absent specific and

24  legitimate reasons, the Commissioner must defer to the opinion of a treating or examining

25  professional.  See Lester, 81 F.3d at 830-31.  The opinion of a non-examining professional,

26  without other evidence, is insufficient to reject the opinion of a treating or examining

5

1   professional.  See id. at 831.  In any event, the Commissioner need not give weight to any

2   conclusory opinion supported by minimal clinical findings.  See Meanel v. Apfel, 172 F.3d 1111,

3   1113 (9th Cir. 1999) (rejecting treating physician's conclusory, minimally supported opinion);

4   see also Magallanes, 881 F.2d at 751.

5          A nurse-practitioner is not considered an acceptable medical source.  See 20

6   C.F.R. § 404.1513(d).  Evidence from other sources may be used "to show the severity of your

7   impairment(s) an how it affects your ability to work."  Id.  Thus, while a plaintiff may produce

8   such evidence to help the Commissioner, there is no requirement that the Commissioner accept

9   or specifically refute it.  See Bunnell v. Sullivan, 912 F.2d 1149, 1152 (9th Cir. 1990), *modified*

10  *on other grounds*, 947 F.2d 341 (9th cir. 1991)  (noting that while plaintiff "is free to offer . . .

11  evidence [from a non-acceptable medical source] to help the [Commissioner] understand his

12  inability to work, . . . there is no requirement that the [Commissioner] accept or specifically

13  refute such evidence.").

14         Plaintiff argues that the ALJ should have credited his treating Family Nurse

15  Practitioner (FNP) Chaney as a treating medical source, and erred in discounting her opinion

16  without clear and convincing or specific and legitimate reasons.

17         After summarizing plaintiff's medical treatment records, the ALJ stated:

18      [I]n February 2008, Dr. David Chamberland, his treating rheumatologist,
        assessed his functional limitation of only "lifting heavy objects" (Ex.
19      3F14-15).  He repeated that assessment in early 2009, as noted elsewhere
        in this decision.  The undersigned finds this substantially consistent with
20      the assessed residual functional capacity above and accords it significant
        weight.  In May 2008 his primary provider, Sally Chaney, a family nurse
21      practitioner, commented that he needs vocational rehabilitation -
        indicating his ability to do *some* type of work (Ex. 4F63).  Dr. Stephen
22      Kolpacoff - who was, based on the medical record, apparently supervising
        Sally Chaney but not personally treat[ing] the claimant - opined on
23      December 1, 2008 that the claimant "will not be able to return to
        customary work" which he noted was "ranch foreman" (Ex. 9F26).  The
24      undersigned finds this consistent with the assessed residual functional
        capacity above and the opinion of the vocational expert below (that the
25      claimant cannot return to that work which was a heavy and semiskilled
        job) and, consequently, accords this opinion great weight.  Finally, in
26      November 2009, Sally Chaney, FNP, filled out a fibromyalgia residual

                                          6

1   functional capacity form noting that he could not complete a normal
2   workday and would be excessively absent from [work] due to his medical
    problems (Ex. 10F2-6).  The undersigned recognizes that the record
3   includes this statement which implies that the claimant is completely
    disabled.  However, the determination of disability is reserved to the
4   Commissioner under 20 C.F.R. § 416.927(e) [FN], is totally unsupported
    by the objective evidence, is contrary to the opinions of the State agency
5   medical consultants who reviewed his medical records (Social Security
    Rulings 96-2p and 96-5p), and last but not least, it has been provided by a
6   non-medical "other" source under the Regulations.  As a result, conclusory
    opinions that a claimant cannot work do not merit controlling weight.  For
7   these reasons, the undersigned declines to assign any weight at all to it.

8   As for other opinion evidence, in accordance with SSR 96-6p, the
    undersigned takes notice that the concluding opinions pertaining to
9   disability contained herein are consistent with the ones reached at the
    initial and reconsideration levels of disability determination (Ex. 5F-8F).
10  In sum, the above residual functional capacity assessment is supported by
    the substantial evidence of record.

11  (CAR 23)

12          Defendant argues the ALJ correctly rejected FNP Chaney's opinion, the cases

13  cited by plaintiff are distinguishable, and regardless, the ALJ provided sufficient valid reasons

14  for rejecting the  FNP's opinion.  The undersigned agrees with defendant's analysis.  As stated

15  above, there is no requirement that the ALJ specifically accept or refute a non-medical source

16  opinion.  As a nurse-practitioner is considered a non-medical source, the ALJ could simply have

17  ignored her opinion.  However, the ALJ did not ignore FNP Chaney's opinion.  Rather, after

18  discussing the medical evidence in some detail, the ALJ specifically concluded that her opinion

19  is unsupported by the objective evidence, is contrary to the opinion of the reviewing physicians,

20  and her conclusory opinion that plaintiff cannot work did not merit controlling weight.  These are

21  sufficient reasons for discounting a non-medical source opinion.

22          In addition, the undersigned agrees that the cases cited in support of plaintiff's

23  position are distinguishable.  In Benton v. Barnhart, 331 F.3d 1030 (9th Cir. 2003), the Ninth

24  Circuit determined that a supervising physician's opinion could be treated as a treating medical

25  source opinion even though the physician had only minimal contact with the plaintiff, because

26  the physician was in contact with and consulted with the nurse-practitioner who was treating the

1   plaintiff and whom the physician was supervising.  Here, the opinion the plaintiff argues should

2   have been adopted by the ALJ was not the supervising physician's opinion, but rather the nurse-

3   practitioner's opinion.  Indeed, the ALJ discussed the one limited opinion from the physician

4   who appeared to be FNP Chaney's supervising physician, Dr. Kolpacoff, that plaintiff  "will not

5   be able to return to customary work" which he noted was "ranch foreman."  The ALJ accepted

6   this opinion.  Noting that opinion was consistent with the vocational expert's opinion that given

7   plaintiff's limitations, the ALJ accepted that plaintiff could not return to his former position as

8   ranch foreman.  Therefore, the facts involved this action are distinguishable from those in

9   Benton.

10              Similarly, plaintiff's reliance on Gomez v. Chater, 74 F.3d 967, 971 (9th Cir.

11   1996), is misplaced.  In Gomez, the Ninth Circuit determined that where a nurse practitioner

12   worked closely with a supervising physician, consulting with the physician often related to the

13   patient's care, the opinion of the nurse practitioner could be considered a treating source.  See id.

14   However, that exception has been interpreted narrowly.  See e.g., Ramirez v. Astrue, No. ED CV

15   09-1371-PJW, 2001 WL 1155682, at *4 (C.D. Cal. Mar. 29, 2011) (physician's co-signature on

16   client-plan prepared by a social worker did not indicate that the social worker was under close

17   supervision of the physician in treating or in prepare the reports, thus social worker's evaluation

18   was not from an "acceptable medical source"); Vasquez v. Astrue, No. CV-08-078-CI, 2009 WL

19   939339, at *6 n.3 (E.D. Wash. Apr. 3, 2009) (PA's report "signed off" by a superior believed to

20   be a doctor did not constitute "acceptable medical source" opinion); Nichols v. Comm'r of Soc.

21   Sec. Admin., 260 F. Supp. 2d 1057, 1066-67 (D. Kan. 2003) (distinguishing Gomez where

22   physician signed the report of an NP but no evidence indicated that NP consulted with the

23   physician during the course of patient's treatment and concluding opinion was not from an

24   acceptable medical source.)   Gomez does not stand for the proposition that any medical

25   professional, who would not otherwise be considered an "acceptable medical source," is treated

26   as an "acceptable medical source" merely because they are supervised to any degree by a

1   physician.  This is supported by the revisions to 20 C.F.R. § 416.913 that removed the reference

2   to "interdisciplinary team" as an acceptable medical source, as was relied on in Gomez.

3        While FNP Chaney may have been supervised by Dr. Kolpacoff to some extent,

4   plaintiff points to no evidence to support the contention that they actually worked together as part

5   of a team or that FNP Chaney consulted with Dr. Kolpacoff on plaintiff's treatment to such an

6   extent that her opinion should qualify as that of a treating source.  Plaintiff points to only one

7   instance where there was any apparent communication between Dr. Kolpacoff and FNP Chaney.

8   In that instance, Dr. Kolpacoff agreed with FNP Chaney about referring plaintiff to a pain clinic,

9   signed a prescription for plaintiff, and signed a state disability form.  The other citation plaintiff

10  provides is to the record for the only time plaintiff saw Dr. Kolpacoff for treatment.  There is no

11  indication in that record that FNP Chaney was involved in that visit, or that there was

12  communication between Dr. Kolpacoff and FNP Chaney.  There is only a note for plaintiff to

13  follow up with FNP Chaney as needed.   This limited contact with Dr. Kolpacoff is not sufficient

14  to treat FNP Chaney's opinion as an acceptable medical source.  According, the ALJ did not err

15  in discounting FNP Chaney's opinion that plaintiff was completely disabled and unable to work.

16        **B.        PLAINTIFF'S CREDIBILITY**

17        The Commissioner determines whether a disability applicant is credible, and the

18  court defers to the Commissioner's discretion if the Commissioner used the proper process and

19  provided proper reasons.  See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996).  An explicit

20  credibility finding must be supported by specific, cogent reasons.  See Rashad v. Sullivan, 903

21  F.2d 1229, 1231 (9th Cir. 1990).  General findings are insufficient.  See Lester v. Chater, 81 F.3d

22  821, 834 (9th Cir. 1995).  Rather, the Commissioner must identify what testimony is not credible

23  and what evidence undermines the testimony.  See id.  Moreover, unless there is affirmative

24  evidence in the record of malingering, the Commissioner's reasons for rejecting testimony as not

25  credible must be "clear and convincing."  See id.; see also Carmickle v. Commissioner, 533 F.3d

26  1155, 1160 (9th Cir. 2008) (citing Lingenfelter v Astrue, 504 F.3d 1028, 1936 (9th Cir. 2007),

1    and Gregor v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006)).

2          If there is objective medical evidence of an underlying impairment, the

3    Commissioner may not discredit a claimant's testimony as to the severity of symptoms merely

4    because they are unsupported by objective medical evidence.  See Bunnell v. Sullivan, 947 F.2d

5    341, 347-48 (9th Cir. 1991) (en banc).  As the Ninth Circuit explained in Smolen v. Chater:

6                The claimant need not produce objective medical evidence of the
             [symptom] itself, or the severity thereof.  Nor must the claimant produce
7            objective medical evidence of the causal relationship between the
             medically determinable impairment and the symptom.  By requiring that
8            the medical impairment "could reasonably be expected to produce" pain or
             another symptom, the Cotton test requires only that the causal relationship
9            be a reasonable inference, not a medically proven phenomenon.

10   80 F.3d 1273, 1282 (9th Cir. 1996) (referring to the test established in Cotton v. Bowen, 799

11   F.2d 1403 (9th Cir. 1986)).

12         The Commissioner may, however, consider the nature of the symptoms alleged,

13   including aggravating factors, medication, treatment, and functional restrictions.  See Bunnell,

14   947 F.2d at 345-47.  In weighing credibility, the Commissioner may also consider: (1) the

15   claimant's reputation for truthfulness, prior inconsistent statements, or other inconsistent

16   testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a

17   prescribed course of treatment; (3) the claimant's daily activities; (4) work records; and (5)

18   physician and third-party testimony about the nature, severity, and effect of symptoms.  See

19   Smolen, 80 F.3d at 1284 (citations omitted).  It is also appropriate to consider whether the

20   claimant cooperated during physical examinations or provided conflicting statements concerning

21   drug and/or alcohol use.  See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002).  If the

22   claimant testifies as to symptoms greater than would normally be produced by a given

23   impairment, the ALJ may disbelieve that testimony provided specific findings are made.  See

24   Carmickle, 533 F.3d at 1161 (citing Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989)).

25         Regarding reliance on a claimant's daily activities to find testimony of disabling

26   pain not credible, the Social Security Act does not require that disability claimants be utterly

incapacitated.  See Fair v. Bowen, 885 F.2d 597, 602 (9th Cir. 1989).  The Ninth Circuit has

repeatedly held that the "mere fact that a plaintiff has carried out certain daily activities . . . does

not . . .[necessarily] detract from her credibility as to her overall disability."  See Orn v. Astrue,

495 F.3d 625, 639 (9th Cir. 2007) (quoting Vertigan v. Heller, 260 F.3d 1044, 1050 (9th Cir.

2001)); see also Howard v. Heckler, 782 F.2d 1484, 1488 (9th Cir. 1986) (observing that a claim

of pain-induced disability is not necessarily gainsaid by a capacity to engage in periodic restricted

travel); Gallant v. Heckler, 753 F.2d 1450, 1453 (9th Cir. 1984) (concluding that the claimant

was entitled to benefits based on constant leg and back pain despite the claimant's ability to cook

meals and wash dishes); Fair, 885 F.2d at 603 (observing that "many home activities are not

easily transferable to what may be the more grueling environment of the workplace, where it

might be impossible to periodically rest or take medication").   Daily activities must be such that

they show that the claimant is "able to spend a substantial part of his day engaged in pursuits

involving the performance of physical functions that are transferable to a work setting."  Fair,

885 F.2d at 603.  The ALJ must make specific findings in this regard before relying on daily

activities to find a claimant's pain testimony not credible.  See Burch v. Barnhart, 400 F.3d 676,

681 (9th Cir. 2005).

      Here, the ALJ found:

> that the claimant's medically determinable impairments could reasonably
> be expected to cause the alleged symptoms; however, the claimant's
> statements concerning the intensity, persistence and limiting effects of
> these symptoms are not credible to the extent they are inconsistent with the
> above residual functional capacity assessment.  The claimant complained
> of severe pain.  It is the conclusion of the Administrative Law Judge that
> the pain experienced by the claimant was limiting, but when compared
> with the total evidence, not severe enough to preclude all types of work.
> The issue is not the existence of pain, but rather the degree of incapacity
> incurred because of it.  While the claimant complained of severe pain, it
> does not seem reasonable to conclude from the findings in evidence that
> such could be the basis for the degree of pain alleged.  The claimant's
> records did not show progressive physical deterioration which might be
> expected when there is intense and continuous pain.  Aquatic therapy was
> recommended to him more than once but he never did it.  He never had
> any surgery of injections (ESIs or triggerpoint) to control pain.  A sample
> patch was given to him only once; the only treatment was medication one

with partial at best success and sporadic use of a TENS unit.  Imaging studies failed to show anything significant and virtually the only finding repeatedly confirmed was fibromyalgia tender points.  Additionally, the record shows an ever-increasing weight and consent morbid obesity.

Further, the claimant's daily activities were not exactly consistent with living with debilitating pain.  As noted above, during the relevant time, he was vacationing, traveled to visit his ill step-father, and enjoyed fishing.  At times he was also non-compliant with the treatment.  Besides not engaging in recommended aquatic therapy, he did not exercise, certainly did not diet, as evidenced by his persistently increasing morbid obesity, kept smoking a pack of cigarettes per day (at the same time complaining of occasional shortness of breath), and drink alcohol occasionally despite the fact of his history as a heavy drinker.  Also diagnosed with OSA he tried C-PAP but claimed it did not work for him so he returned the equipment, as noted above, and obviously did nothing more about it.  He even never used an Albuterol inhaler that he had, as also shown above.  The record also shows that he reported that Darvocet worked, reducing pain, but he stopped using it on his own because it allegedly caused headaches.  Claimant cannot be found disabled if he or she does not follow prescribed treatment without a good reason.  20 C.F.R.404.1530(b).  Although the outcome of this claim would not be any different even if he was compliant (due to the record being unsupportive of his allegations *per se*), the fact remains that he was not and that he failed to produce or establish such a reason (cause).

(CAR 22-23).

In support of these findings, the ALJ summarized the evidence, noting Dr. Chamberland's assessment that plaintiff was limited only of "lifting heavy objects;" and that plaintiff's physical examination was unremarkable, with the exception of fibromyalgia tenderpoints.  He also noted FNP Chaney's comment that he needed vocational rehabilitation.  In addition, plaintiff was vacationing despite allegedly debilitating pain, and denied "*inter alia*, sleep disorder, fatigue, weakness, and malaise."  (CAR at 21-22).

Plaintiff disagrees with the ALJ's assessment, and contends the ALJ did not provide sufficient clear and convincing reasons based on specific substantial evidence for rejecting plaintiff's credibility.

The court does not substitute its own judgment over that of the ALJ's when there is evidence which reasonably supports either confirming or reversing the ALJ's decision.  See Tackett v. Apfel, 180 F.3d 1094,1098 (9th Cir. 1999).  This applies to the ALJ's credibility

1  determination as well.  The ALJ set forth several reasons for her determination, including the

2  medical evidence failing to show progressive physical deterioration, plaintiff's activities as

3  inconsistent with plaintiff's allegations of disabling pain, and plaintiff's failure to follow various

4  prescribed/recommended courses of treatment.  These are clear and convincing reasons, as set

5  forth in the ALJ's opinion, and they are supported by substantial evidence in the record.  While

6  the ALJ's interpretation of the evidence may not be the only reasonable one, it is still a

7  reasonable interpretation and is supported by substantial evidence.  Providing the ALJ's decision

8  with the proper deference, the court finds the ALJ's credibility determination was not erroneous.

9          **C.    VOCATIONAL EXPERT'S OPINION**

10             Plaintiff's final contention is that the vocational expert's opinion was based on a

11  hypothetical question which failed to accurately reflect plaintiff's abilities.

12             The ALJ may meet his burden by propounding to a vocational expert hypothetical

13  questions based on medical assumptions, supported by substantial evidence, that reflect all the

14  plaintiff's limitations.  See Roberts v. Shalala, 66 F.3d 179, 184 (9th Cir. 1995).  Specifically,

15  where the Medical-Vocational Guidelines are inapplicable because the plaintiff has sufficient

16  non-exertional limitations, the ALJ is required to obtain vocational expert testimony.  See

17  Burkhart v. Bowen, 587 F.2d 1335, 1341 (9th Cir. 1988).

18             Hypothetical questions posed to a vocational expert must set  out all the

19  substantial, supported limitations and restrictions of the particular claimant.  See Magallanes v.

20  Bowen, 881 F.2d 747, 756 (9th Cir. 1989).  If a hypothetical does not reflect all the claimant's

21  limitations, the expert's testimony as to jobs in the national economy the claimant can perform

22  has no evidentiary value.  See DeLorme v. Sullivan, 924 F.2d 841, 850 (9th Cir. 1991).  While

23  the ALJ may pose to the expert a range of hypothetical questions based on alternate

24  interpretations of the evidence, the hypothetical that ultimately serves as the basis for the ALJ's

25  determination must be supported by substantial evidence in the record as a whole.  See Embrey v.

26  Bowen, 849 F.2d 418, 422-23 (9th Cir. 1988).

1         Here, the ALJ posed the following hypothetical to the vocational expert:

> Okay.  Let's look at occasionally lifting and carrying 20, 20 pounds;
> frequently 10.  Standing and walking six out of eight, sitting six out of
> eight.  The posturals, all of them would be occasionally; climbing,
> balancing, stooping, leaning, crouching and crawling occasionally  And he
> would have to avoid concentrated exposure to extreme cold and vibrations,
> avoid concentrated exposure.  And, okay, with that would he be able to go
> back to past work?

(CAR 47).  The vocational expert responded that plaintiff could return to his past work of counter clerk job, but not as the gas station attendant or ranch hand.  (CAR 47).  In addition, the vocational expert testified based on that hypothetical plaintiff could perform other jobs in the national economy, including ticketer, table worker, and office helper.  (CAR 48).  Both the ALJ and plaintiff's attorney then posed additional hypotheticals to the vocational expert, limiting plaintiff's abilities more.  The vocational expert then testified that under such restrictions, plaintiff would not be able to sustain competitive employment.

         The issue is whether the hypothetical the ALJ posed to the vocational expert was sufficient, whether it identified all of plaintiff's limitations.  As discussed above, the court finds the ALJ did not err in her analysis of the medical opinions, nor in discounting plaintiff's credibility.  The hypothetical the ALJ posed to the vocation expert took into account the limitations he accepted and set forth in the residual functional capacity (RFC) assessment.  While the ALJ's determination as to plaintiff's RFC may not have been the only one possible, it is supported by substantial evidence, and as such will not be disturbed here.  Similarly, the hypothetical the ALJ posed to the vocational expert included all of the limitations he determined to be supported by the evidence, and since that determination was not erroneous, the hypothetical posed must be considered legally adequate.  The court, therefore, finds no error in the ALJ's hypothetical, nor in the vocational expert's testimony based thereon.

/ / /

/ / /

/ / /

14

1

2                                    **IV.  CONCLUSION**

3          Based on the foregoing, the court concludes that the Commissioner's final

4   decision is based on substantial evidence and proper legal analysis.  Accordingly, IT IS HEREBY

5   ORDERED that:

6                  1.      Plaintiff's motion for summary judgment (Doc. 18) is denied;

7                  2.      Defendant's cross-motion for summary judgment (Doc. 19) is granted; and

8                  3.      The Clerk of the Court is directed to enter judgment and close this file.

9

10

11   DATED:  March 16, 2012

12
                                            _____
13                                          **CRAIG M. KELLISON**
                                            UNITED STATES MAGISTRATE JUDGE
14

15

16

17

18

19

20

21

22

23

24

25

26